UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **KADIAN D. ROBINSON**<br>502 Trebisky Road<br>Richmond Heights, OH 44143<br><br>and<br><br>**RUBY D. SLAUGHTER-ROBINSON**<br>502 Trebisky Road<br>Richmond Heights, OH 44143<br><br>    Plaintiffs,<br><br>    v.<br><br>**NATIONSTAR MORTGAGE, LLC. dba**<br>**MR. COOPER**<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215<br><br>    Defendant. | Case No.<br><br><br><br><u>**COMPLAINT**</u><br><br><br>**(DEMAND FOR A JURY TRIAL)** |

Plaintiffs Kadian D. Robinson and Ruby D. Slaughter-Robinson by and through counsel, for their Complaint against Defendant Nationstar Mortgage[1], LLC dba Mr. Cooper state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiffs Kadian D. Robinson and Ruby D. Slaughter-Robinson (collectively the "Robinsons" or "Plaintiffs") are the owners of real property located at 502 Trebisky Road, Richmond Heights, OH 44143 (the "Home").

---

[1] In the State of Ohio, Mr. Cooper is a fictitious name for Nationstar Mortgage, LLC. (https://www.sos.state.oh.us/sos/ last visited 08/09/2019 at 12:14 a.m.)

1

2. The Robinsons currently maintain the Home as their primary, principal residence, and have so maintained the Home at all times relevant.

3. Defendant Nationstar Mortgage, LLC dba Mr. Cooper ("Defendant" or "Mr. Cooper") is the current servicer of a note executed by the Robinsons (the "Note") and a mortgage on the Home executed by the Robinsons that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan"). A true and accurate copy of the Loan is attached as ***Plaintiffs' Exhibit 1.***

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA).

5. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.36 of Regulation X.

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as the Robinsons maintain the Home as their primary residence within this District.

## INTRODUCTION

7. In an effort to save the Home and to continue to make reasonable payments on the Loan, the Robinsons sought relief from Mr. Cooper in the form of a loan modification in October of 2017.

8. Subsequently on or about July 19, 2018 Mr. Cooper offered the Robinsons a loan modification. The Robinsons accepted the loan modification and the Loan was modified effective August 1, 2018. Despite the Loan being modified, Mr. Cooper subsequently inexplicably began charging additional fees to the Loan.

9. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

11. The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

12. Mr. Cooper is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

13. The Robinsons have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

14. The Robinsons are asserting a claim for relief against Mr. Cooper for violating 12 U.S.C. §§ 2605(k)(1)(C) and (E) for violations of 12 C.F.R. §§ 1024.35 and 1024.36 under Regulation X as set forth, *infra*.

15. The Robinsons also assert a private right of action against Mr. Cooper for unfair and deceptive acts and practices in servicing and collecting on the Loan.

16. The Fair Debt Collection Practices Act (FDCPA) was enacted by Congress to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C § 1692a.

17. Mr. Cooper is a debt collector, the Robinsons are consumers, and the Loan is a debt, as defined by the FDCPA.

18. The Loan was in default at the time that Mr. Cooper began servicing the Loan.

19. The Robinsons assert a private right of action against Mr. Cooper under the FDCPA, pursuant to 15 U.S.C. § 1692k, for Mr. Cooper's conduct in connection with collection of the Loan and the Robinsons are entitled to recover actual damages, statutory damages, costs, and attorneys' fees.

**BACKGROUND**

20. On February 1, 2017, Mr. Cooper initiated foreclosure proceedings against the

Robinsons in the case captioned *Nationstar Mortgage LLC vs. Kadian Robinson, et al.*, in the Court of Common Pleas for Cuyahoga County, Ohio and assigned Case Number CV-17-875268.

21. As of July 18, 2018, the Loan's Lender Paid Expenses balance was approximately $4,506.08. A true and accurate copy of the informational statement dated July 18, 2018 is attached as ***Plaintiffs' Exhibit 2***.

22. On or about August 1, 2018, the Robinsons and Mr. Cooper entered into a loan modification (the "Modification") wherein the Robinsons' total monthly payment obligation would be $1,226.55. The monthly payments included $670.19 for principal and interest and $556.36 for escrow amounts (adjusting periodically). A true and accurate copy of the Modification is attached as ***Plaintiffs' Exhibit 3***.

23. The Modification states:

> 1. As of August 1, 2018, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $138,282.36, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.
>
> 2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.125%, from August 1, 2018. Borrower promises to make monthly payments of principal and interest of U.S. $670.19, beginning on the 1st day of September, 2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on August 1, 2048 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

See ***Plaintiffs' Exhibit 3, ¶¶ 1-2***.

24. To date, the Robinsons have remained current on the obligations under the Modification. A true and accurate copy of the informational statement dated July 8, 2019 is attached as ***Plaintiffs' Exhibit 4***.

25. Despite the above, Mr. Cooper began charging additional Lender Paid Expenses to the Loan. A true and accurate copy of the informational statements received by the Robinsons after August 1, 2018 are attached as ***Plaintiffs' Exhibit 5***.

## THE ROBINSONS RETAIN COUNSEL AND TRY TO HAVE MR. COOPER CORRECT ERRORS

26. Upon discovering the improper fees, the Robinsons hired Dann Law to investigate potential errors relating to Mr. Cooper's servicing of the Loan.

27. On or about January 16, 2019, the Robinsons, through counsel, sent correspondence to Mr. Cooper consisting of or otherwise comprising a request for information pursuant to 12 C.F.R. § 1024.36 requesting detailed information related to the Loan (the "RFI"). The RFI is attached as ***Plaintiffs' Exhibit 6***.

28. Mr. Cooper received the RFI on January 23, 2019 at its designated address for such. USPS tracking information for the RFI is attached as ***Plaintiffs' Exhibit 7***.

29. On or about February 1, 2019, Mr. Cooper provided correspondence in response to the RFI (the "Response to the RFI"). The cover letter for the Response to the RFI and relevant enclosures are attached as ***Plaintiffs' Exhibit 8***.

30. Mr. Cooper enclosed a transaction history for the Loan in the Response to the RFI, however the transaction history was dated February 13, 2018 and was missing the most recent year's worth of transactions for the Loan. See ***Plaintiffs' Exhibit 8***.

31. On or about April 9, 2019, the Robinsons, through counsel, sent correspondence to Mr. Cooper consisting of or otherwise comprising a notice of error pursuant to, *inter alia*, 12 C.F.R. §§ 1024.35(b)(5) and 1024.35(b)(11) ("NOE #1"), asserting that Mr. Cooper imposed improper fees on the Loan by charging Lender Paid Expenses after the Modification and failed to properly respond to the RFI. NOE #1 is attached as ***Plaintiffs' Exhibit 9***.

32. Mr. Cooper received NOE #1 on April 16, 2019 at its designated address for such. USPS tracking information for NOE #1 is attached as ***Plaintiffs' Exhibit 10***.

33. Having received no response to NOE #1, on or about July 12, 2019 the Robinsons, through counsel, sent correspondence to Mr. Cooper consisting of or otherwise comprising a notice of

error pursuant to, *inter alia*, 12 C.F.R. §§ 1024.35(b)(11) ("NOE #2"), asserting that Mr. Cooper failed to respond to NOE #1.  NOE #2 is attached as **Plaintiffs' Exhibit 11.**

34. Mr. Cooper received NOE #2 on July 18 2019 at its designated address for such. USPS tracking information for NOE #1 is attached as **Plaintiffs' Exhibit 12**.

35. On or about July 24, 2019 Mr. Cooper sent correspondence in response to NOE #2 (the "Response to NOE #2"). The Response to NOE #2 is attached as **Plaintiffs' Exhibit 13**.

36. In the Response to NOE #2, Mr. Cooper provides non-responsive, vague, conclusory, and contradictory information relating to the Lender Paid Expenses charged to the Loan after the Modification:

> (a) Mr. Cooper vaguely explains that corporate advances for certified mail, posting cost, and publication were capitalized into the Modification's unpaid principal balance; goes on to state that all other corporate advances were not capitalized therefore it was unable to capitalize the corporate advances in the amount of $1,344.40 but fails to explain the specific nature of the corporate advances charged to the Loan;
>
> (b) Mr. Cooper then asserts in a conclusory fashion that all fees and costs paid by Mr. Cooper are valid and have been charged to the Loan and will not be waived.

See **Plaintiffs' Exhibit 13**.

## THE IMPACT ON THE ROBINSONS

37. Mr. Cooper failed to properly service the Loan which has directly and proximately caused the following damages to the Robinsons:

> (a) Mr. Cooper charged a minimum of $1,344.40 in Lender Paid Expenses to the Loan;
>
> (b) Mr. Cooper has misapplied payments the Robinsons made towards their principal balance in order to pay for the Lender Paid Expenses;

5

(c) The Robinsons incurred attorneys' fees and postage costs in the preparation and mailing of the notices of errors; and,

(d) Mr. Cooper's conduct has caused the Robinsons to suffer great emotional distress driven by the fear of Mr. Cooper demanding amounts over and beyond what the Loan and the Modification provide for after having just put the foreclosure behind them and misapplying their payments, which has resulted in anxiety and other emotional distress.

## PATTERN AND PRACTICE OF RESPA

38. At the time of the filing of this Complaint, Mr. Cooper has had at least Six Thousand Seven Hundred Thirty Nine (6,739) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

39. Plaintiffs have reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Mr. Cooper against other borrowers. In particular, the Robinsons have reviewed the fifteen (15) consumer complaints attached hereto and identified as *Plaintiffs' Exhibit 14*. The date, details and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Mr. Cooper has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

## COUNT ONE: BREACH OF CONTRACT

40. The Robinsons restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 39 in their entirety, as if fully rewritten herein

41. The Loan, as modified pursuant to the Modification, is an enforceable contract between the Robinsons and Mr. Cooper.

42. Mr. Cooper breached the contract by failing to honor the express terms of the

Modification and the Loan, by improperly trying to collect amounts not authorized by the Modification and the Loan.

43. The Robinsons performed their obligations pursuant to the contract by making payment of amounts properly due and by otherwise meeting their obligation imposed by the parties' contract.

44. Mr. Cooper breached the Loan contract. The breach is one of bad faith as demonstrated by the above allegations. Mr. Cooper failed to properly process and honor the terms of the Modification offered to the Robinsons, which they accepted and performed in good faith to the best of their abilities.

45. Mr. Cooper owed the Robinsons a fiduciary duty to handle the Modification properly and in accordance with the parties' agreement. Mr. Cooper breached their duty to the Robinsons by attempting to collect amounts not due under the terms of the Modification and the Loan.

46. The Robinsons have suffered actual damages as detailed, *supra*, including but not limited to, incurring lost time, expenses, and attorneys' fees in attempts to have Mr. Cooper correct their breach. The Robinsons continue to suffer economic and non-economic damages as a result of the breach including continued emotional distress.

47. The Robinsons are entitled to actual damages, reasonable attorneys' fees and costs from Mr. Cooper.

## COUNT TWO: VIOLATIONS OF RESPA

**[Multiple violations of 12 C.F.R. §§ 1024.35 (d) and (e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) for failure to acknowledge and reasonably investigate and properly respond to notices of error]**

48. Plaintiffs restate and incorporate the statements and allegations contained in paragraphs 1 through 39 in their entirety, as if fully rewritten herein.

49. 12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

7

50. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

51. 12 C.F.R. § 1024.35(d) provides that a servicer must acknowledge in writing receiving a notice of error from a borrower within five (5) days of receipt.

52. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

53. A servicer shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" 12 U.S.C. §§ 2605(k)(1)(C).

54. A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."12 U.S.C. §§ 2605(k)(1)(E).

55. NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See **Plaintiffs' Exhibit 9**.

56. The Robinsons sent NOE #1 to Mr. Cooper at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") and Mr. Cooper received the same at such address. See **Id**.

8

57. Through NOE #1, the Robinsons alleged that Mr. Cooper committed errors by improperly charging fees to the Loan and failing to respond properly the RFI. See *Id.*

58. Mr. Cooper received NOE #1 at the Designated Address April 16, 2019. See ***Plaintiffs' Exhibit 10***.

59. Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Mr. Cooper was required to respond to NOE #1 within thirty (30) business days of their receipt of NOE #1.

60. The Robinsons did not receive an acknowledgement in response to NOE #1 within the required time frame pursuant to 12 C.F.R. § 1024.35(d). See ***Plaintiffs' Exhibit 11.***

61. NOE #2 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Id.*

62. The Robinsons sent NOE #2 to Mr. Cooper at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") and Mr. Cooper received the same at such address. See ***Plaintiffs' Exhibit 11***.

63. Through NOE #2, the Robinsons alleged that Mr. Cooper committed an error by failing or otherwise refusing to properly respond to NOE #1. *Id*.

64. Mr. Cooper received NOE #2 at the Designated Address on or about July 18, 2019. See ***Plaintiffs' Exhibit 12.***

65. Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Mr. Cooper was required to respond to NOE #2 within thirty (30) business days of their receipt of NOE #2.

66. The Response to NOE #2 failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). See ***Plaintiffs' Exhibit 13.***

67. Mr. Cooper, through the Response to NOE #2, did not acknowledge that any of the alleged errors occurred and state the date of the correction of any such errors. *Id*.

68. Mr. Cooper, through the Response to NOE #2, inexplicably claimed that they could not capitalize $1,344.40 because it would have made the Modification's unpaid principal balance

9

higher. See *Id.*

69. Had Mr. Cooper conducted a reasonable investigation, which would have at a bare minimum included reviewing the Modification, it would have been readily apparent that legal fees and foreclosure costs were capitalized to reach the modified unpaid principal balance. Therefore, Mr. Cooper's statement that they did not commit an error in charging corporate advances to Loan after the effective date of the Modification, with no further explanation as to what purpose Mr. Cooper had for making the corporate advances was insufficient.

70. To this date, Mr. Cooper has failed to correct the errors asserted through NOE #1 or NOE #2.

71. Mr. Cooper's failure to properly acknowledge NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

72. Mr. Cooper's failure to properly respond to NOE #1 and NOE #2 constitutes at least two (2) separate violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E), one (1) such violation for each of the notices of error to which Mr. Cooper failed to properly respond.

73. Mr. Cooper's actions are part of a pattern and practice of behavior in violation of the Robinsons' rights and the rights of other similarly situated borrowers and in violation of Mr. Cooper's obligations under Regulation X of RESPA. Mr. Cooper's pattern and practice as such is evidenced by their refusal to appropriately respond to and correct the errors the Robinsons alleged through NOE #1 and NOE #2.

74. The Robinsons have suffered damages as a direct and proximate result of Mr. Cooper's actions including incurring legal fees and expenses in the preparation and mailing of NOE #1 and NOE #2, and, ultimately, for the preparation, filing, and prosecution of this case to remedy Mr. Cooper's wrongful conduct.

75. Additionally, the Robinsons have suffered, and continue to suffer, significant damages including other legal expenses, anxiety, and emotional distress, as further described, *supra*.

76. As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Robinsons for actual damages, statutory damages, costs, and attorneys' fees.

## **COUNT THREE: VIOLATION OF RESPA**

**[Violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) for failure to properly respond to a request for information]**

77. The Robinsons restate and incorporate their statements and allegations contained in paragraphs 1 through 39 in their entirety, as if fully rewritten herein.

78. 12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

79. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

80. 12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

    [A] servicer must respond to an information request by either:
    (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
    (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

81. Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

    A servicer must comply with the requirements of paragraph (d)(1) of this section:
    (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other

     relevant contact information for, the owner or assignee of a mortgage loan; and
  (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

82. A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."12 U.S.C. §§ 2605(k)(1)(E).

83. The RFI met the definition of a request for information. ***See Plaintiffs' Exhibit 6***.

84. The Robinsons sent the RFI to Mr. Cooper at the Designated Address and Mr. Cooper received the RFI at the Designated Address on February 1, 2019. ***See Id.***

85. Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Mr. Cooper was required to provide written correspondence to the Robinson's in response to the RFI "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

86. The Robinsons never received any written correspondence from Mr. Cooper containing a complete transaction history for the Loan on or before the response deadline and Mr. Cooper therefore failed to comply with the requirements of 12 C.F.R. § 1024.36(d)(1) regarding the RFI.

87. The Robinsons incurred fees in having counsel prepare and send NOE #1 on their behalf to Mr. Cooper at the Designated Address, which would not have been required but for Mr. Cooper's failure to properly respond to the RFI. ***See Plaintiffs' Exhibit 9.***

88. Mr. Cooper's actions, in failing to provide a complete transaction history for the Loan to the Robinsons in response to the RFI by the respective response deadline, constitute a willful violation of 12 C.F.R. § 1024.36(d).

89. Mr. Cooper's actions are believed to be a pattern and practice of behavior in conscious disregard for the Robinsons' rights.

90. As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Robinsons for actual

damages, statutory damages, costs, and attorneys' fees, including, but not limited to incurring costs and fees for the preparation and mailing of NOE #1 which would not have been necessary but for Mr. Cooper's failure to properly respond to the RFI. *Id.*

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. §1692(k)**

91. The Robinsons restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 39 in their entirety, as if fully rewritten herein.

92. 15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

93. 15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

94. In the course of acting as a debt collector Mr. Cooper received and handled the loss mitigation applications and correspondence regarding the Loan.

95. Although Mr. Cooper was aware of the Modification Mr. Cooper charged the Loan for corporate advances after the effective date of the Modification.

96. Mr. Cooper violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or attempt to collect a debt.

97. Mr. Cooper violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

98. Mr. Cooper's conduct has caused the Robinsons to suffer actual damages including, but not limited to, incurring legal fees and expenses in the preparation and mailing of NOE #1 and emotional distress.

99. Mr. Cooper's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the Robinsons' rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Kadian D. Robinson and Ruby D. Slaughter-Robinson pray that this Court enter its order granting judgment in their favor as follows:

A) For actual damages for each Plaintiff against Defendant Mr. Cooper as to all allegations contained in Counts One through Four;

B) For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant Mr. Cooper for each and every violation of 12 C.F.R. §§ 1024.35 and 1024.36 as alleged in Counts Two and Three;

C) A finding that Mr. Cooper committed violations of the FDCPA as alleged in Count Four.

D) For statutory damages against Mr. Cooper in the amount of One Thousand Dollars ($1,000.00) for their violation of the FDCPA as alleged in Count Four;

E) For costs, and reasonable attorneys' fees;

F) Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Whitney P. Horton*
Whitney P. Horton (0098224)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com
*Counsel for Plaintiffs*

**JURY DEMAND**

Plaintiffs hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Whitney P. Horton*
Whitney P. Horton (0098224)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
DannLaw
*Counsel for Plaintiffs*

14